## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JEREMY M. GLAPION,** | Civil Case No.: 21-cv-599 |
| Plaintiff, | |
| v. | **Motion Date: February 16, 2021** |
| **RENOVATION REFERRAL, LLC d/b/a SOLAR MEDIA TEAM; GABRIEL SOLOMON SR.** | |
| Defendant. | |

## PLAINTIFF JEREMY M. GLAPION'S MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT

## BACKGROUND

Between June 1, 2020 and August 19, 2021, Defendants Renovation Referral, LLC d/b/a Solar Media Team and Gabriel Solomon Sr. placed 108 unsolicited, unwanted, unconsented telemarketing calls to Plaintiff Glapion's Google Voice telephone number ending in 9268. Of these 108 calls, 102 resulted in a pre-recorded message being left on Plaintiff's voicemail. Plaintiff's telephone number was on the National Do-Not-Call Registry for more than two years at the time the calls began.

Accordingly, on January 12, 2021, Plaintiff filed the instant lawsuit. As Defendants did not disclose their identities in the voicemail messages, Plaintiff was required to issue subpoenas to identify Defendants. On August 20, 2021, Plaintiff filed the operative First Amended Complaint, Docket Entry 4, naming the two identified Defendants.

Service proved difficult, as Defendant Solomon was both the owner of and registered agent for Defendant Renovation, but the listed address for Defendant Solomon was a PO Box. Plaintiff was eventually able to locate potential addresses for Defendant Solomon, but Plaintiff's process servers still had difficulty serving Defendant Solomon. In the interim, Plaintiff reached out to Defendant Solomon on numerous occasions via email in an attempt to discuss the lawsuit. Specifically, Plaintiff reached out to Defendant Solomon at gabe@solarmediateam.com on no less

1

than ten occasions. Glapion Decl., Exhibit A.[1] While Defendant Solomon's replies were infrequent, Defendant Solomon did on occasion reply, including directly to Plaintiff's August 20, 2021 email attaching the complaint. Defendant Solomon's most recently on January 24, 2022. Defendant Solomon and Defendant Renovation were eventually served on January 4, 2022.

Defendants did not respond by January 25, nor did they respond by February 1 as Defendant Solomon requested on January 24. Plaintiff, of his own volition, and considering the automatic 14-day extension permitted by Local Rule 6.1, waited until February 11 to request an entry of default. [Dkt. 9.] The Clerk entered default on February 14. Having heard nothing from Defendants since then despite multiple emails, Plaintiff now moves the Court to enter Default Judgment against Defendants, jointly and severally, in the amount of $315,000.[2]

---

[1] This email chain starts at the most recent email, and contains earlier emails quoted below. Plaintiff redacted a portion of this email chain dealing with a medical issue Defendant Solomon was purportedly experiencing.

[2] Notably, Defendant Solomon has been sued on several occasions for TCPA violations. He has also previously defaulted, only to later request the default be vacated because he confused the papers served in that lawsuit with another TCPA lawsuit he was involved in. *See Johansen v. Renovation Referral, LLC; Gabriel Alan Solomon*, Case No. 20-cv-02930 (clerk default on July 10, 2020; motion to vacate on September 8, 2020 because he thought he was served with papers about a *different* TCPA lawsuit). Plaintiff suspects this will happen again here, once faced with the sizeable judgment requested, and after causing Plaintiff to spend considerable time on this Motion for Default Judgment. Plaintiff notes this to make clear that Defendant Solomon is and was *unequivocally* aware of this lawsuit and is actively choosing not to answer. And though Defendant claimed he needed until

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) provides the Court with discretion to enter default judgment. Before a default judgment may be entered, the party moving for default judgment must have obtained an entry of default by the clerk. In this case, this occurred on February 14, 2022. Following a default, "all well-pleaded allegations in a complaint, except those relating to the amount of damages, are admitted as true[.]" *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1146 (3d Cir. 1990). In cases where, as here, the movant seeks damages for a sum certain or for a sum which can by computation be made certain, the Court may rely upon detailed affidavits rather than a hearing or additional evidentiary inquiry in entering a default judgment. In TCPA cases, so long as the plaintiff submits sufficient evidence to support the number of calls at issue, the court can award damages without a hearing by multiplying the number of calls by either $500 (minimum statutory damages) or $1,500 (treble damages for willful or knowing violations). *See, e.g. Cosentino v. Cont'l Fin. Co.*, 2017 U.S. Dist. LEXIS 234066, *6-7 (M.D. Fla. May 10, 2017).

## DISCUSSION

---

February 1 to respond due to a medical condition, he has since sufficiently recovered and found time to go dirt bike racing on or about February 13 and February 14. Glapion Decl., Exhibit B. Plaintiff emailed Defendant Solomon again on February 17 to inform him of the entered default, and the paperwork seeking an entry of default was delivered to Defendant Solomon via certified mail on February 22, signed for by "Gabe". Glapion Decl., ¶ __.

## I.   Defendants are responsible for the calls.

Plaintiff pleads in his complaint that since June 16, 2020, Plaintiff has received telephone calls from certain telephone numbers that all leave voicemail messages with the single prerecorded word "Goodbye." [First Am. Complaint ("FAC"), Dkt. 4, ¶¶ 17-18.] Plaintiff pleads that these telephone numbers are currently used by Defendants or were used by Defendants at the time of the calls. *Id.* at ¶ 20. Plaintiff pleads that the contact information and the email used to log in to the account belong to Defendant Solomon. *Id.* at ¶ 21. Plaintiff pleads that Defendant Solomon had full control over all calls made from this account and the full ability to monitor, direct, and audit such calls. *Id.* at ¶ 22. Plaintiff also pleads that Defendant Solomon was at all times aware of and in full control over the calls coming from his account on behalf of Defendant Renovation. *Id.* at ¶ 44. Taken as true, these allegations establish that both Defendant Renovation and Defendant Solomon were jointly responsible for any calls originating from the account for which Defendant Renovation and Defendant Solomon were responsible. While this is sufficient, in the interest of thoroughness, Plaintiff will expand on the above with information ascertained after the filing of the complaint.

On July 29, 2021, this Court granted Plaintiff's motion for leave to serve third-party subpoenas prior to the Rule 26(f) conference to identify the caller(s) that placed the calls at issue herein. [Dkt. 3.] On August 3, Plaintiff served a subpoena on Onvoy

(d/b/a Inteliquent) to learn the identities of approximately 53 telephone numbers that had placed calls to Plaintiff's telephone number ending in 9268. [Exhibit.] Inteliquent does not have "end user subscribers", but instead provides telephone numbers to other service providers for that service provider to provide to its own end users. Glapion Decl., Exhibit C. On August 19, 2021, Inteliquent was able to identify Ytel as the service provider for 50 of the numbers at the time of the calls at issues (but could not locate records for three of the numbers). *Id.* That same day, Plaintiff served a subpoena on Ytel for the identity of the customer using the previously identified telephone numbers and a list of all calls that telephone number made to Plaintiff's telephone number in 9268. Kennedy Decl., Exhibit A.

The following day, Ytel produced a list of calls made by the target numbers to Plaintiff's phone number ending in 9268. This list shows 108 calls made between June 1, 2020 and August 19, 2021. Kennedy Decl., Exhibit B.

Ytel also identified Defendant Gabe Solomon, using the email address gabe@solarmediateam.com, as the contact information for the account using the numbers, and Solar Media Team (which is a d/b/a of Defendant Renovation Referral) as the company associated with the account. *Id* at Exhibit A. The login username for this account is gabe@solarmediateam.com. *Id.* at Exhibit A; ¶ 6. This is the same email address at which Plaintiff has corresponded with Mr. Solomon in connection with this case. Glapion Decl., Exhibit A.

In sum, the account from which the 108 calls to Plaintiff's telephone number originated:

- Belonged to Defendant Renovation Referral, which is owned by Defendant Solomon. Glapion Decl., Exhibit D.

- Lists Defendant Solomon as the contact for that account. Kennedy Decl., Exhibit A.

- Uses Defendant Solomon's email address—through which he continues to communicate on his behalf—to log in to that account. Kennedy Decl., Exhibit A; ¶ 6.

- Defendant Solomon had full control over all calls made from this account and the full ability to monitor, direct, and audit such calls. [FAC, ¶ 22.]

Accordingly, Defendant Renovation Referral, as the company on whose behalf the calls were made, and Defendant Solomon, who was the primary account holder and who either initiated the calls himself or, by providing his log in information to someone else, explicitly authorized the calls, are jointly and severally liable for any TCPA violations stemming from the calls.[3]

## II.   Violations of § 227(b)

---

[3] *Weisbein v. Allergan, Inc.*, 2021 U.S. Dist. LEXIS 52977, *15 (C.D. Cal. Mar. 16, 2021) ("Plaintiff is correct that the TCPA permits joint and several liability amongst co-tortfeasors); *City Select Auto Sales, Inc. v. David/Randall Assocs., Inc.*, 2015 U.S. Dist. LEXIS 96445, *8-11 (D.N.J. July 23, 2015).

Section 227(b) of the TCPA makes it unlawful for any person or company "to initiate any telephone call to a residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party". 47 U.S.C. § 227(b)(1)(B). Excepted are calls for an emergency purpose, calls not made for a commercial purpose, calls made for a commercial purpose but that do not constitute telemarketing, calls made by or on behalf of a tax-exempt nonprofit, or calls delivering a health care messages. 47 C.F.R. § 64.1200(a)(3). The burden of proving consent and these exceptions is an affirmative defense for the one who would seek to claim its benefits (e.g. Defendants here). *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362, 366 (3d Cir. 2015).

> a.  Plaintiff's telephone number is a residential telephone number.

As Plaintiff explains in his Declaration, his Google Voice number is a residential number. It is accessed only at his residence and is not used for business. Glapion Decl. ¶ 15. It has only been provided in the context of personal use. *Id.*

In addition, telephone numbers on the DNC Registry are presumed to be residential. *See* 18 F.C.C. Rcd. 14014, ¶ 36 (noting the presumption that "wireless subscribers who ask to be put on the national do-not-call list" are 'residential subscribers'").

Finally, it is not the subscriber's *use* of a telephone number that determines whether that person is a "residential subscriber". Instead, the terms "business

subscriber" and "residential subscriber" are expressly defined in the same subchapter as the regulations at issue here. "[S]imilar language contained within the same section of a statute must be accorded a consistent meaning." *NUCA v. First Nat'l Bank & Trust Co.*, 522 U.S. 479, 502 (1998); *see also, e.g.*, *United States v. Davies*, 139 S. Ct. 2319, 2329 (2019) (considering nearly identical language in two different statutes and writing "we normally presume that the same language in related statutes carries a consistent meaning."); *Lobbins v. United States*, 900 F.3d 799, 802 (6th Cir. 2018) ("[A]bsent good reason to do otherwise, we give the same words the same meaning throughout the same statute."); Antonin Scalia & Bryan A. Garner, *Reading Law* 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text", and only "a material variation in terms suggests a variation in meaning.")

The term "[b]usiness subscriber refers to a subscriber to telephone exchange service for businesses." 47 C.F.R. § 64.2305(b). The term "[r]esidential subscriber refers to a subscriber to a telephone exchange service that is not a business subscriber." 47 C.F.R. § 64.2305(c).[4] Plaintiff subscribes to his phone number

---

[4] Plaintiff acknowledges that there are cases that examined a subscriber's use. But none of the parties in those cases briefed these definitions before those courts, and none of the courts therefore considered these definitions.

8

ending in 9268 in his personal capacity using his personal information and email address. Glapion Decl., ¶ 15.

     b. <u>Plaintiff did not consent to the calls.</u>

Plaintiff did not consent to any calls from either Defendant. [FAC, ¶¶ 3, 49]; Glapion Decl. ¶¶ 16-17. Plaintiff has done no business with either Defendant nor has he had any interaction with either Defendant beyond the calls and this litigation. Plaintiff never provided his phone number to either Defendant. Glapion Decl., ¶ 17.

In addition, the burden of proving consent is on the caller. *Evankavitch* at 793 F.3d 355 at 366. Defendants have failed to answer Plaintiff's complaint or provide any evidence of consent, it has failed to meet this burden. Accordingly, as a matter of law, Plaintiff did not consent to Defendant's calls.

     c. <u>The calls used a prerecorded voice.</u>

Of the 108 calls identified, 102 of the calls connected and left a pre-recorded voicemail. Glapion Decl., ¶¶ 18-20. These voicemails all consisted of a pre-recorded or artificial voice simply saying "good bye." An example of this call can be found at https://bit.ly/3pZXNr7.[5] *Id.* at ¶ 20. All calls listed in Exhibit B to the Kennedy Declaration with a duration (column two) of 12 or more were identical to this example call. *Id.* at 18.

     d. <u>No exception applies.</u>

---

[5] This link redirects to https://glapionlaw.sharefile.com/share/view/sc46aa2f6fe534f1c8e29583647b2735c

As noted, Defendants bear the burden of proof on the enumerated exceptions. *Evankavitch*, 793 F.3d at 362, 366. By not defaulting, Defendants waived these defenses. *E.g. VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 301 (3d Cir. 2014) ("Affirmative defenses not raised in litigation are waived.").

Even if raised, none of the exceptions would apply. There is no indication that the calls were for any sort of emergency and instead seem to strictly be unsolicited telemarketing calls. Defendants are not non-profit organizations. The calls did not deliver a health care message. And while it is true the calls did introduce an advertisement, the calls were telemarketing, which is defined by the purpose of the calls rather than the content.[6]

  e.  <u>Willful and/or knowing violations.</u>

A plaintiff may recover treble damages under § 227(b)(3) by showing that defendant knew or acted in reckless discard that "it was using a [prerecorded or artificial voice] to place a call, and that the call is directed toward a [residential telephone number]." *Arcieri v. Suntuity Solar Ltd. Liab. Co.*, 2021 U.S. Dist. LEXIS 186205, *25, *27-28 (D.N.J. Sept. 28, 2021) (Wolfson, C.J.). In other words, violations are knowing and subject to trebling if Defendants knew they were committing each act necessary for a TCPA violation. Presumably, then, though not

---

[6] This is discussed in more detail below, section III(b).

discussed in *Arcieri* which was in a different context, Defendants here would also need to know their calls were telemarketing.

Defendants made the calls. It would be hard to imagine a scenario they made the calls and did not know that the calls were using a prerecorded or artificial voice. To the contrary, as pled, the brief, prerecorded nature of the calls was intentional and part and parcel of Defendants' scheme to invite callbacks to pitch offers. [FAC, ¶¶ 23-37]. The goal was to present prerecorded offers or to encourage a quick, curious callback to a number that left a voicemail at which point Plaintiff would be presented with offers. *Id.*

Defendants also knew or recklessly disregarded that Plaintiff's number was residential. Either Defendants indiscriminately mass dialed numbers (reckless disregard) or targeted Plaintiff's number without ascertaining whether it was residential or business (reckless disregard). Defendant Solomon also claims that Defendants' sole purpose was to "speak to homeowners about solar[.]" Glapion Decl., Exhibit A. Clearly, calls to "homeowners" to speak about solar should place Defendants on notice that those associated numbers were residential.

Furthermore, as Plaintiff alleges, Defendants' calls provide *no* identifying information as to the identity of the caller, and cycle through and quickly de-activate numbers to avoid "old" numbers being traced back to them. FAC, ¶¶ 5, 23-25. There is no reason to do this unless Defendants knew they faced significant liability if they

were caught. Defendants 108 calls to Plaintiff used a remarkable 54 different telephone numbers.

       f.  <u>Damages</u>

Section 227(b) of the TCPA provides for $500 per call made in violation of its provisions. Defendants made 102 prerecorded voice calls to Plaintiff's telephone number ending in 9268 without Plaintiff's prior express consent. Accordingly, Plaintiff is entitled to $51,000 in damages for these violations. Because, however, Defendants' violations were knowing and/or willful, Plaintiff requests that this amount be trebled to $153,000.

## III.   Violations of § 227(c)

Section 227(c) of the TCPA provides a provide right of action to recover $500 to $1500 (for willful or knowing violations) to any person who has received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection[.]" 47 U.S.C. § 227(c)(5). Relevantly, 47 C.F.R. § 64.1200(c)(2) prohibits the initiation of a "telephone solicitation" to a residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry.

       a.  <u>Plaintiff was a residential telephone subscriber.</u>

As discussed *supra*, section II(a), Plaintiff is a residential telephone subscriber with respect to the 9268 telephone number.

   b.  <u>The calls were telephone solicitations.</u>

A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64. 1200(f)(15). Excluded from this definition are calls made with the call recipient's invitation, calls to persons with whom the caller has an established business relationship, or by a tax-exempt nonprofit organization. *Id.* None of these exceptions apply factually, as Plaintiff did not invite the calls, did not have an established business relationship with Defendants, and Defendants are not a tax-exempt nonprofit organization. But even if they could, Defendants bear the burden of proof on exceptions, and by not responding, they have failed to establish any of these defenses.

Importantly, "telephone solicitation" (and telemarketing) are defined by *purpose*, not content. Courts are uniform on this point. The Eighth Circuit has held in the TCPA context that "[w]hile the content of the calls controlled whether they were 'advertisements,' their purpose controlled whether they were 'telemarketing.'"[7] *Golan v. Veritas Ent., LLC*, 788 F.3d at 820. In *Golan*, defendant left a message stating: "Liberty. This is a public survey call. We may call back later." 788 F.3d at 819. Defendant argued that its phone message did not contain an

---

[7] Though these cases use "telemarketing" rather than "telephone solicitation", these terms are defined identically in the statute except that "telephone solicitation" includes the three exceptions listed above.

advertisement or qualify as telemarketing. The court agreed that because the message did not mention property, goods, or services, it was not an advertisement. *Id.* However, recognizing the distinction between *advertising* and *telemarketing* in the TCPA, the court wrote "[w]hile the content of the calls controlled whether they were 'advertisements,' their purpose controlled whether they were 'telemarketing.'" *Id.* at 820. It found that the calls, though they did not mention any product or service, were part and parcel of a campaign to promote a movie. *Id.* Accordingly, the calls were telemarketing.

The Ninth Circuit held similarly: "[n]either the [TCPA] nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Whether a call is telemarketing should be approached "with a measure of common sense." *Id. In Chesbro*, the court found that prerecorded messages from Best Buy informing customers that their "Reward Zone" certificates were about to expire were both informational *and* telemarketing, because the calls urged the recipient to redeem the RewardZone points before they expired and thanked the recipient for shopping at Best Buy. 705 F.3d at 918. The court concluded that "[b]ecause the calls encouraged recipients to engage in future purchasing activity, they … constituted telemarketing under [47 C.F.R. § 64.1200(f)(12)]." *Id.* at 918.

The FCC has also repeatedly reiterated a purpose-based approach to determining whether calls are telemarketing. In 2003, the FCC wrote that calls made to "inquire about a customer's satisfaction with a product already purchased, but are motivated in part by the desire to ultimately sell additional goods or services" would be telemarketing. 2003 FCC TCPA Order, 18 FCC Rcd. 14014, 14098 ¶ 142 (F.C.C. 2003). It further wrote that "[i]f the call is intended to offer property, goods, or services for sale either during the call, or in the future … that call is an advertisement." *Id.* The FCC held the same in 2012. 2012 FCC TCPA Order, 27 FCC Rcd 1830, 1842 ¶ 30.

As such, while Defendant's calls were either unanswered or only left the single word "good bye", context makes clear the purpose of the calls. Plaintiff pleads in the complaint that on the one occasion he was able to connect back to a number, he was presented with a list of telemarketing offers. [FAC, ¶¶ 25-31.] Taken as true, this scheme to drop single word voicemails and presenting offers to a person when they would call back would also qualify the calls as telephone solicitations.

These facts are very similar to *Golan*. Just like *Golan*, the message left did not make any sales pitch or give any indication of the purpose of the call. Approaching the calls with a measure of common sense, however, the Court found that those calls, while nondescript in the voicemails they left, were nevertheless part of a campaign to promote a product for purchase. The Court should do the same here.

In correspondence, Defendant Solomon has denied doing anything but marketing solar. Glapion Decl., Exhibit A.[8] While Defendant Solomon should have answered the complaint and presented this version of facts, it would change nothing. In an August 20, 2021 email from Defendant Solomon to Plaintiff, Defendant Solomon made clear that "we only marketed for solar" and "[a]ll we did was follow up with people who requested information about solar, we would speak to them live … and after verifying info we would have them speak with a sales person." *Id.* Furthermore, Defendants' website, www.solarmediateam.com, proudly states "over a million 100% exclusive solar leads generated" and explains that it "helps [solar installers] find new customers and expand your business". Glapion Decl., Exhibit E. Further down the page it states that Solar Media Team's "*sole purpose* is emphasizing solar lead generation by utilizing marketing channels that offer a 100% contact rate." Glapion Decl, Exhibit E. As such, whether the calls were made for the purposes of marketing solar (as Defendant Solomon has claimed) or to induce the recipient to call back and listen to telemarketing offers (as pled in Plaintiff's complaint), the outcome is the same: the calls are telephone solicitations.

     c.  <u>Plaintiff's telephone number was on the National Do-Not-Call</u>

---

[8] Though Defendant Solomon denies making pre-recorded calls in these emails, Plaintiff has produced evidence proving 1) outbound calls 2) from Defendant Renovation Referral's and Defendant Solomon's account 3) that resulted in a pre-recorded message. In any event, whether pre-recorded calls were made is relevant only to Plaintiff's 227(b) claim. Claims under § 227(c) do not require the use of any specific technology.

Registry at the time of the calls.

Plaintiff's telephone number ending in 9268 has been on the National Do-Not-Call Registry since May 16, 2018. [FAC, ¶ 56.]

     d.  Willful and/or knowing violations.

A plaintiff may recover treble damages under § 227(c)(5) by showing that defendant "knew or acted in reckless disregard as to whether the plaintiff's telephone number was registered on the [Do-Not-Call Registry] and as to whether it called plaintiff more than once in a twelve-month period." *Arcieri*, 2021 U.S. Dist. LEXIS 186205 at *27-28. Defendants, as the initiators of the calls and those who set up the calling programs, absolutely knew that it was calling Plaintiff's phone number more than once in a 12-month period. Between June 1, 2020 and June 1, 2021, Defendants placed 84 calls to Plaintiff's telephone number. Kennedy Decl., Exhibit B. Between June 1, 2021 and when the calls finally stopped in August 2021, Defendants placed 24 calls to Plaintiff's telephone number. *Id.* It is implausible that Defendants did not know it called Plaintiff more than once in a 12-month period. As to Plaintiff's number being on the Do-Not-Call Registry: Defendants either obtained the database, which is required to avoid liability for violations 47 C.F.R. § 64.1200(c), and ignored it, or did not obtain it, recklessly disregarding Plaintiff's inclusion thereon.

Furthermore, as Plaintiff alleges, Defendants' calls provide *no* identifying information as to the identity of the caller, and cycle through and quickly de-activate

numbers to avoid "old" numbers being traced back to them. FAC, ¶¶ 5, 23-25. There is no reason to do this unless Defendants knew they faced significant liability if they were caught. Defendants 108 calls to Plaintiff used a remarkable 54 different telephone numbers.

e. Damages.

Section 227(c) of the TCPA provides for $500 per call made in violation of its provisions. Defendants made 108[9] unsolicited telemarketing calls to Plaintiff's residential telephone number ending in 9268 after it was added to the National Do-Not-Call Registry. Accordingly, Plaintiff is entitled to at least $54,000 in damages for these violations. Because, however, Defendants' violations were knowing and/or willful, Plaintiff requests that this amount be trebled to $162,000.

## CONCLUSION

Plaintiff respectfully asks that the Court enter default judgment in the amount of $315,000 against Defendants jointly and severally, reflecting $153,000 for willful violations of § 227(b) and $162,000 for willful violations of § 227(c). Should the Court find that Plaintiff has not shown the violations to be willful and/or knowing, Plaintiff requests that the Court enter a judgment of $105,000, reflecting minimum statutory damages of $51,000 for violations of § 227(b) and $54,000 for violations of § 227(c).

---

[9] The reason for 108 actionable calls here versus 102 in the previous section is that § 227(b) requires prerecorded messages and § 227(c) does not. Six of the calls from Defendants to Plaintiff did not result in prerecorded messages.

**Dated:** March 11, 2022

s/ Jeremy M. Glapion_____
Jeremy M. Glapion
**THE GLAPION LAW FIRM, LLC**
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com

19